J-S36016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF T.S.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.L., MOTHER | |
| | No. 2248 MDA 2015 |

Appeal from the Decree Entered November 24, 2015,
in the Court of Common Pleas of York County,
Orphans' Court at No(s): 2015-0105.

| | |
|---|---|
| IN RE: ADOPTION OF T.S.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.L., MOTHER | |
| | No. 2249 MDA 2015 |

Appeal from the Order Entered November 24, 2015,
in the Court of Common Pleas of York County,
Orphans' Court at No(s): CP-67-DP-0000131-2014.

BEFORE: MUNDY and DUBOW, JJ., STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 30, 2016**

_____

[*] Former Justice specially assigned to the Superior Court.

In these consolidated appeals, Appellant, C.L.L. ("Mother") appeals from the order changing the permanency goal from reunification to adoption, and from the decree involuntarily terminating her parental rights to T.S.G. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b). We affirm.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Prior to the initial placement of the now three-year-old Child, Mother had an extensive history with Children's Services of the City of New York and York County Office of Children, Youth and Families ("the Agency") concerning Child's older half-siblings. Mother's involvement with the Agency continued after the birth of Child in August 2012.[1] After a period of monitoring, the Agency accepted the family for services in October 2013. In June 2014, Child's half-siblings alleged that Mother locked them in the attic for extended periods and that they were "terrified" to remain in the residence. The caseworker observed a padlock on the attic door, a filthy mattress on the floor, cat feces and urine on the floor, and clothing strewn throughout the very hot attic room.

The Agency filed an Application for Emergency Protective Custody on June 24, 2014. Following a Shelter Care hearing, Orphans' Court awarded

---

[1] Child's father is S.T.G. ("Father"). Father's whereabouts have remained unknown during the length of the proceedings. Orphans' Court also terminated Father's rights to Child.

legal and physical custody of Child to the Agency, and the Agency placed Child in foster care.

On September 9, 2014, Orphans' Court adjudicated Child dependent and ordered Child to remain in the legal and physical custody of the Agency. At that time, the Orphans' Court established a permanency goal of return to parent and ordered Mother to comply with the following objectives:  attend all future court hearings, cooperate with the Agency, acquire and maintain appropriate housing, undergo random drug and alcohol testing, submit to a psychological evaluation and cooperate with recommendations, and participate in visitation with Child as recommended by the Agency and therapist.

Since the date of adjudication, Child has remained in the legal and physical custody of the Agency. He currently resides with his foster parents and his three half-siblings, who are also subject to juvenile court jurisdiction.

On November 10, 2014, the Orphans' Court ordered that Mother's medical and educational rights were suspended and granted the Agency sole medical and educational rights to Child.

Between December 2012 and July 2014, three different in-home teams opened cases with Mother; however, each closed unsuccessfully.

Between February 24, 2014, and May 26, 2015, the Agency prepared four family service plans for Mother.

In Permanency Review Orders dated December 1, 2014, May 26, 2015, and October 28, 2015, the Orphans' Court made findings that: 1)

Mother failed to comply with the permanency plan; 2) the Agency had made reasonable efforts to finalize the permanency plan; 3) that Mother had made no progress toward alleviating the circumstances which necessitated Child's original placement; 4) legal and physical custody was confirmed with the Agency; and 5) there continued to be a need for placement of Child outside the care and custody of Mother.

On August 18, 2015, the Agency filed a Petition to Change the Court Ordered Permanency Plan Goal and a Petition for Involuntary Termination of Parental Rights ("TPR Petition") pursuant to the Adoption Act, specifically, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8).[2]

The Orphans' Court held an evidentiary hearing ("TPR hearing") regarding the Agency's Petitions on October 28, 2015 and October 29, 2015.

At the TPR hearing, the Agency admitted a Stipulation and exhibits, and presented testimony from caseworkers involved in the case since prior to placement.

Testimony reflected that Mother had failed to complete all of her court-ordered or agency recommended objectives. Mother did not obtain a psychiatric evaluation. (N.T., 10/28/15 at 104-105). Mother only participated in one out of eight parenting classes. *Id.* at 105. Mother participated in a drug and alcohol evaluation, but was non-compliant with

---

[2] The Agency filed Similar TPR Petitions for each of Child's half-siblings.

recommended treatment. *Id.* at 105-106. Mother did not provide documentation of housing or employment. *Id.* at 77-78. Most importantly, Mother failed to visit consistently with Child, despite the Agency offering bi-monthly supervised visitation. *Id.* at 85. Initially, Mother visited with Child during court hearings, but failed to have any contact with Child since December 2014. *Id.* at 81.

Although Mother was present at the beginning of the hearing and had informed her counsel that she wished to testify, she did not return after the luncheon recess, even though she had notice to do so.

At the close of this hearing, the Orphans' Court took the matter under advisement. By order and decree entered November 23, 2015, the court changed Child's goal to adoption, and terminated Mother's parental rights. This timely appeal by Mother follows.

## ISSUES ON APPEAL

Mother raises the following issues on appeal:

   I.    Whether the [Orphans'] Court erred in changing the goal from reunification to adoption.

   II.   Whether the [Orphans'] Court erred in terminating the parental rights of Mother pursuant to Sections 2511 (a)(1), (2), (5) and (8) of the Adoption Act.

   III.  Whether the [Orphans'] Court erred in concluding that termination of parental rights would best serve the needs and welfare of [Child] pursuant to Section 2511 (b) of the Adoption Act.

Mother's Brief at 5 (excess capitalization omitted).

Because evidence regarding the permanency plan goal change and TPR petitions substantially overlap, and the legal standards to be applied are the same, we will first address Mother's termination issues. ***See In the Interest of R.J.T.***, 9 A.3d 1179, 1191 n.14 (Pa. 2010) (noting that courts should combine hearings on these two petitions since the evidence substantially overlaps and allows for faster permanency for the child).

## LEGAL ANALYSIS

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** We may not reverse, however, merely because the record would support a different result." ***Id.*** at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination

of parental rights, this Court need only agree with any one subsection under Section 2511(a). **See In re B.L.W.** 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **Id.** (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

    a)    The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

        (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce **clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.**

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted) (emphasis added).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M,* 856 A.2d 847, 855 (Pa.Super. 2004).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id.* (internal citations omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of Section 2511(a)(1). Specifically, the court found that, in the relevant period prior to the Agency's filing of the TPR Petition on August 18, 2015, Child had remained in placement, and Mother had failed to meet her established goals. The court found that she failed to obtain employment or housing for Child, and that she failed to cooperate with her in-home teams and counselor. In fact, the Orphans' Court found that Mother's whereabouts were frequently unknown:

> [Child] has been dependent for approximately thirteen (13) months which is approximately one third (1/3) of his life. . . . Since the adjudication of dependency, Mother was unable to obtain stable employment or appropriate housing for [Child]. Mother's whereabouts were frequently unknown and the Agency was unable to determine the appropriateness of Mother's current residence. The Agency's Exhibit 10, a York County Children's Advocacy Center Interview Summary for S.S.M., [Child's eldest half-

> sibling], dated July 9, 2014, reported that [she] stated that Mother and Father locked [Child] in his room and starved him for a period of ten (10) days. . . .Throughout this dependency matter, Mother failed to cooperate with her in-home teams and counselor. [Mother] is [not] in a position to obtain custody of [Child] at this time. [Child] is currently residing with a foster family and testimony established that [Child] is comfortable in their home. Therefore, the Court finds that the termination of Mother's . . . parental rights will provide a benefit to [Child] in that [he] will achieve stability and permanency in a loving and safe home.
>
> Therefore, for all of the reasons stated above, the Agency has proven by clear and convincing evidence that termination of parental rights to [Child] is justified pursuant to Section 2511(a)(1) of the Adoption Act.

Orphans' Court's Opinion, 11/23/15, at 9-10.

Mother argues that the termination of her parental rights is not supported by the evidence of record because the Agency failed to meet its burden under Section 2511(a)(1). According to Mother, her request to continue the case "in order to achieve reunification with [Child]" should have been granted. Mother's Brief at 17. She argues that she "was denied visitation at the inception of this case and unfortunately was undergoing major obstacles due to the loss of her [m]other and her housing." *Id.* Mother asserts that she has not demonstrated a settled purpose of relinquishing her parental rights to Child, and that evidence was never presented that she abused or neglected him. Mother then references the TPR hearing testimony from a member of one of the in-home teams who worked with her from March to July 2014, to demonstrate that she is a fit parent. (N.T., 10/28/15, at 36-44).

Our review of the record refutes Mother's claims. Because Mother did not testify, she did not further explain her representations to the Agency caseworkers regarding her recent losses or her completion of any of her permanency plan goals. Nevertheless, it was for the Orphans' Court, as a matter of credibility, to determine the weight to be given such assertions. *In re M.G.*, *supra*.

Moreover, even if true, Mother presented no evidence as to why she made no progress toward her family service plans prior to that time. While she does rely upon the testimony of an in-home team member regarding an approximate four month period in 2014, we note that this interaction occurred largely prior to Child's placement, and, nevertheless the in-home team was closed unsuccessfully.

Finally, we note that the Orphans' Court was not to consider Mother's efforts, if any, made after the Agency filed the TPR Petition when considering termination under 23 Pa.C.S. section 2511(a)(1). *See* 23 Pa.C.S. § 2511(b) (providing that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the [TPR Petition]."

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and we need not consider the other bases for termination under this section. *See B.L.W.*, *supra*.

- 11 -

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court found that due to Child's young age and lack of visits with Mother, no bond exists between them. Accordingly the court found that termination of Mother's parental rights

would not have a negative impact on Child, and that a healthy bond existed between Child and the foster parents:

> The Court has thoroughly evaluated [Child's] relationships in this matter. . . .The Court finds that, due to [Child's] young age and lack of visits with Mother, Mother has no bond with [Child]. At this point, the Court believes that the termination of Mother's . . . parental rights will have no negative impact on [Child]. The Court also finds that the bond between [Child] and foster parents is strong and healthy. Testimony established that [Child] is happy and feels comfortable in their care. The foster parents take care of [Child's] daily needs and act as [Child's] parental figures. The bond that [Child] has with the foster family can provide safety, security and permanence for [Child]. Termination of parental rights will best meet the needs of [Child] and permit [Child] to achieve the stability that he deserves.

Orphans' Court Opinion, 11/23/15, at 12-13.

Mother argues that, because she was "precluded from visiting with [Child] due to the recommendation of the therapist and guardian ad litem," the Orphans Court "was unable to adequately determine what, if any, bond exists between Mother and [Child] and whether termination of parental rights would have an adverse impact upon [Child]." Mother's Brief at 18. She then summarily states that, "[b]ased upon all evidence presented, termination of parental rights was not in the best interests of [Child]." *Id.* Mother further contends "[i]t is an obvious benefit to any child to have a relationship with a biological parent and their extend family," but because she was precluded from visiting with Child, she "was denied the opportunity

to allow the bond between her and [Child] to remain intact and/or grow naturally[.]" *Id.* at 20.

Of course, Mother's absence prevented her from testifying regarding her bond with Child, and no other witness stated that one currently exists. Mother's claim that she was precluded from visiting with Child is refuted by our review of the record. Testimony and evidence admitted at the TPR hearing established that the therapists for Child's three older half-siblings recommended no visits because these children were afraid of Mother. No such prohibition existed as to Mother's visits with Child. (N.T., 10/28/15, at 80-81). Indeed, the Agency's employees testified that Mother never requested visits with Child. *Id.* at 121. According to the Agency, the last time Mother saw Child was in December 2014 at a court proceeding. Thus, Mother's claim fails.

Finally, given the above, we conclude that the Orphans' Court did not err in changing Child's permanency goal to adoption. *See R.J.T.*, 9 A.3d at 1183-84 (noting that when considering a Motion to Change the Permanency Goal to Adoption, the court looks to the "best interests" of the child rather than those of the child's parents; in considering the "best interests" of the child, the court should consider the child's safety, protection, and physical, mental, and emotional welfare).

## CONCLUSION

In sum, we find that Orphan's Court properly granted the Motion to Change the Permanency Goal to Adoption and Petition to Terminate Mother's Parental Rights. Accordingly, we affirm.

Order and Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2016